United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY CLAYTON STOFLE,

Petitioner,

v.

I. D. CLAY, Warden,

Respondent.
_______________________________/

No. C 09-02847 SBA (PR)

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS HABEAS PETITION AS UNTIMELY; AND DENYING CERTIFICATE OF APPEALABILITY**

(Docket no. 6)

On June 22, 2009, Petitioner Jeffrey Clayton Stofle, a state prisoner incarcerated at the Sierra Conservation Center, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties are presently before the Court on Respondent's motion to dismiss the petition as untimely under 28 U.S.C. § 2244(d), the statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Petitioner filed an opposition, and Respondent filed a reply. Having read and considered the papers submitted, the Court GRANTS Respondent's motion to dismiss.

## BACKGROUND

On October 6, 2003, Petitioner pled nolo contendere to second degree murder. On November 4, 2003, the Mendocino County Superior Court sentenced him to fifteen years to life in prison. Petitioner did not appeal his conviction.

On May 10, 2007, Petitioner filed a habeas petition in the Mendocino County Superior Court, which was denied as untimely on June 4, 2007.

On July 26, 2007, Petitioner filed a habeas petition in the California Court of Appeal. The state appellate court denied his petition on August 22, 2007.

On March 18, 2008, Petitioner filed a habeas petition in the California Supreme Court. The state supreme court denied his petition on August 27, 2008.

United States District Court
For the Northern District of California

Petitioner filed the present habeas petition on June 22, 2009.[1]

In its Order dated February 25, 2010, the Court directed Respondent to file an answer or a motion to dismiss on procedural grounds in lieu of an answer.

On June 8, 2010, Respondent filed a motion to dismiss the case as untimely.

On August 5, 2010 and September 9, 2010, the Court granted Petitioner two extensions of time to file his opposition to the motion to dismiss.

On October 8, 2010, Petitioner filed his opposition. On October 25, 2010, Respondent filed a reply.

**DISCUSSION**

AEDPA imposes a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences generally must be filed within one-year of the date on which the judgment became final after the conclusion of direct review or the time passed for seeking direct review.

The one-year period commences to run from "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner could have sought review by the state court of appeals or the state supreme court, but failed to do so, the limitation period will begin running the day after the date on which the time to seek such review expired. See Wixom v. Washington, 264 F.3d 894, 897-98 (9th Cir. 2001) (limitation period began running after time to seek discretionary review of Washington Court of Appeals' decision in the Washington Supreme Court expired); see also Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making of order being appealed) (formerly Cal. Rule of Court 31).

[1] Respondent claims Petitioner filed his federal habeas petition on June 25, 2009. (Mot. to Dismiss at 2.) However, his petition is signed June 22, 2009. (Pet. at 7.) A federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than the date it is received by the courts. Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001), vacated and remanded on other grounds by Carey v. Saffold, 122 S. Ct. 2134 (2002). This is known as "the mailbox rule." Id. The Court applies the "mailbox rule" to deem the petition filed on June 22, 2009, the date it was signed.

Here, Petitioner was sentenced on the underlying criminal matter on November 4, 2003. Because Petitioner did not appeal the judgment, that decision became final sixty days later, on January 3, 2004. See Cal. Rule of Court 8.308(a). As such, AEDPA's one year statute of limitations thus began to run on January 4, 2004. See 28 U.S.C. § 2244(d)(1)(A). Accordingly, Petitioner was required to file a federal habeas corpus petition no later than January 3, 2005. See 28 U.S.C. § 2244(d). Because he did not file the present petition until June 22, 2009 -- almost four and a half years after the limitations period had expired -- the petition is untimely unless Petitioner can show that he is entitled to have the limitations period tolled by statute or under the doctrine of equitable tolling.

## I. Statutory Tolling

AEDPA's one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). However, statutory tolling is not available where, as here, the petitioner filed his federal petition after the limitations period had already lapsed. "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (holding that Oregon's two-year limitations period for the filing of state habeas petitions does not alter the operation of the AEDPA, even though prisoners who take full advantage of the two-year period will forfeit their right to federal habeas review); see also Rashid v. Kuhlmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations").

Under the AEDPA, Petitioner had until January 3, 2005, to file his federal habeas petition. However, he did not file his state habeas petition until May 10, 2007. Because the AEDPA limitations period had lapsed when Petitioner filed his state petition, he is not entitled to statutory tolling.

## II. Equitable Tolling

Alternatively, the AEDPA's one-year limitations period can be equitably tolled because

§ 2244(d) is a statute of limitations and not a jurisdictional bar. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation omitted). The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). The party seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (noting that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." ). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" Miranda, 292 F.3d at 1066 (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)). At the same time, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002). When a prisoner is proceeding pro se, his allegations regarding diligence in filing a federal petition on time must be construed liberally. Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

Here, Petitioner argues that he is entitled to equitable tolling because his untimeliness was caused by extraordinary circumstances beyond his control. Specifically, Petitioner contends "he was not mentally competent enough, nor did he have the mental ability based on this to be able to properly research, file and meet the AEDPA standard." (Opp'n at 1.) He cites "problems with schitzoprenea [sic], PTSD, suicidal ideations, severe depression and anxiety, an inability to sleep

and eat, [and] an inability to focus his mind or thoughts." (Opp'n at 2.) Petitioner also attaches hundreds of pages of exhibits purportedly related to his mental health condition while incarcerated. Respondent counters that Petitioner is not entitled to equitable tolling based on mental illness because his mental health records "do not establish a profound mental incapacity that prevented him from acting on his legal rights." (Reply at 3.)

In assessing an equitable tolling claim based on mental illness, the Court must also take care not to deny a motion for equitable tolling before a sufficient record can be developed. In Laws v. Lamarque, the Ninth Circuit reversed the district court's order granting a motion to dismiss because it failed to develop the record in response to Laws's claim of mental incompetency. 351 F.3d 919, 924 (9th Cir. 2003). At the time the district court dismissed the petition, the record showed that a divided panel of psychiatric experts had concluded that Laws was competent at the time of his trial. However, the record did not contain any medical records from the period for which equitable tolling was requested. Id. at 923. Further, the respondent had not provided any evidence to rebut Laws's assertion that he was "deprived of any kind of cons[ci]ousness." Id. at 924. The Ninth Circuit determined that a district court should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling. Id. Instead, Ninth Circuit cases require only that there be "circumstances consistent with [the] petitioner's petition . . . under which he would be entitled to . . . equitable tolling" to trigger further factual development of the record. Id. (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding)). The Ninth Circuit ultimately found that the district court erred in granting judgment against Laws because, in light of the inadequate record and unrebutted assertions before it, "[i]t [was] enough that Laws 'alleged mental competency' in a verified pleading." Laws, 351 F.3d at 924 (citations omitted). The court was careful to point out, however, that "a petitioner's statement, even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced." Id. Therefore, the Ninth Circuit held that Laws was entitled to further factual development or an evidentiary hearing on the issue of whether he was precluded from filing

his petition by reason of mental impairment. Id. Thus, under Laws, a district court may not grant a motion to dismiss merely because a petitioner fails to provide evidence beyond conclusory statements to support his claim for equitable tolling. Rather, the court may only dismiss a claim in the presence of a sufficiently developed record containing "countervailing evidence" that rebuts a petitioner's claim. Id.

In Laws, the record contained no medical reports from the period during which the petitioner claimed to be incompetent. Id. at 923. Furthermore, the "state [had] offered no evidence at all that he was [competent] in the years when his petitions should have been filed." Id. The present case differs significantly in that the record contains periodic psychological reports and other records relating to Petitioner's mental health from 2003 though 2008. (Opp'n, Exs. A-D.) Therefore, the record is sufficiently developed for consideration.

The Ninth Circuit has articulated a two-part test to determine whether a claim of mental illness is sufficient for purposes of invoking equitable tolling. Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010). First, "a petitioner must show his mental impairment was an 'extraordinary circumstance' beyond his control." Id. at 1099 (quoting Holland v. Florida, 130 S. Ct. 2549, 2562 (2010)). To meet this requirement, he must demonstrate that he was either "unable rationally or factually to personally understand the need to timely file," or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." Bills, 628 F.3d at 1100. Second, a petitioner "must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances." Id.

Here, the record suggests that Petitioner has at least some mental health issues. Attached to Petitioner's opposition are exhibits from the jail medical staff that indicate he was prescribed anti-depressants beginning on August 28, 2003. (Opp'n, Ex. A at 5-17, 21, 37.) At his November 14, 2003 initial mental health evaluation in the prison, Petitioner was placed in a mental health program on an outpatient basis. (Id. at 4.) He was diagnosed with "schizophrenia, paranoid type;" however, his cognition was within normal limits. (Id., Ex. C at 1-6.) However, a showing of mental illness

alone will not necessarily toll the limitation period because most mental illnesses are treatable, and with proper treatment many sufferers are capable of managing their own affairs. See Miller v. Runyon, 77 F.3d 189, 192 (7th Cir. 1996). In Petitioner's case, both before the start of and during the limitations period, he was afforded treatment; and by all accounts, Petitioner was able to manage his own affairs. For instance, the record shows that Petitioner was able to, inter alia: (1) file a grievance on October 29, 2003, against a nurse who failed to address his complaints; (2) speak with his psychologist in December, 2003 about his case, withdrawing his plea and contacting an attorney; (3) read court transcripts and letters from the victim's family in April, 2004; (4) write poetry in April and June of 2004; (5) complete anger management worksheets in June, 2004; and (6) discuss books he was reading in July, 2004. (Id. at 51, 53, 111, 116, 142, 147, 176.) He also communicated with his family over the phone and received visits from them. (Id. at 84, 92, 114.) He requested a change in his group therapy schedule, which was granted. (Id. at 92-94.) Finally, an October 7, 2004 psychiatrist report states that Petitioner was oriented to time, place and person; his cognition was grossly intact; his sleep and appetite were within normal limits; his behavior was cooperative; his speech was fluent; his thought process was goal-oriented; and he had no delusions or perceptual disturbances. (Id. at 188.) Therefore, while Petitioner was receiving mental health treatment while the limitations period was running, his medical records do not demonstrate a mental incapacity so severe that it prevented him from understanding and acting upon his rights.

Likewise, after the limitations period had expired, Petitioner continued to demonstrate mental competency. In March, 2005, Petitioner retained an attorney, Frank G. Prantil, to review his case. (Pet., Ex. 1 at 81.) The attorney sent Petitioner a letter regarding the AEDPA deadline, (id. at 85-86), and noted in another letter that one of their meeting was "great and productive" (id. at 87). Petitioner was eventually able to file his state habeas petitions, beginning in May, 2007. (Pet., Exs. 1, 2.) In addition, Petitioner passed the GED test by October 30, 2007. (Opp'n, Ex. C at 2.)

In sum, all of the above descriptions of Petitioner's mental state -- taken from of his mental health records and the exhibits attached to his petition -- serve as evidence that throughout the time he was receiving treatment for his mental health problems, he had the ability to manage his own affairs. Petitioner's conclusory assertion that his mental illness constitutes an "extraordinary

circumstance" meriting equitable tolling is not persuasive. Based on a thorough review of the facts asserted in Petitioner's opposition to the motion to dismiss and attached exhibits, the Court concludes that Petitioner has not shown that his mental illness was an "extraordinary circumstance beyond his control." Holland, 130 S. Ct. at 2562. Because his "cognition was within normal limits" and he was able to manage his own affairs -- including his legal affairs -- during the statutory period, the record does not demonstrate that he was unable to "understand the need to timely file." See Bills, 628 F.3d at 1100. Nor was he unable personally to prepare a habeas petition, given that he could file health care grievances, read court transcripts, and eventually file his state habeas petitions.

As to the second prong of the Bill test, the Court finds that during the limitations period Petitioner did not "show diligence in pursuing the claims to the extent he could understand them." Id. at 1100. Petitioner demonstrated understanding of his claims during visits to his psychologist in December, 2003 and in his correspondence with Attorney Prantil in March, 2005. (Opp'n, Ex. C at 51; Pet., Ex. 1 at 81.) Yet Petitioner did not file the present petition until June 22, 2009, over four years after the limitations period expired. Despite his mental illness, Petitioner had the ability to file a timely petition and failed to do so. Therefore, Petitioner's allegations relating to his mental illness do not constitute an "extraordinary circumstance" meriting equitable tolling. See Beeler, 128 F.3d at 1289.

Finally, Petitioner argues that he is entitled to equitable tolling because his conviction was "a violation of due process," that he "was convicted under an invalid statute," that he "had insufficient assistance of counsel," and that his "plea was given unknowingly, unintelegently [sic], without real understanding of the circumstances and consequences and under duress." (Opp'n at 7-11.) Though not entirely clear, Petitioner appears to argue that his habeas should be considered ostensibly because they have merit; however, the presentation of allegedly meritorious claims does not excuse his untimely filing. Therefore, Petitioner fails to establish that he is entitled to equitable tolling on this basis.

Accordingly, the limitations period will not be equitably tolled, and the instant habeas

United States District Court
For the Northern District of California

petition is untimely.

**III. Actual Innocence Exception**

Petitioner argues that "his sentence has resulted in a fundamental miscarriage of justice" under Schlup v. Delo, 513 U.S. 298 (1995). (Opp'n at 3-7.) Respondent counters that "there is no Schlup actual innocence exception to override AEDPA's statute of limitations." (Reply at 5 (citing Lee v. Lampert, 610 F.3d 1125, 1128 (9th. Cir. 2010)).) In 2002, the Ninth Circuit noted in dictum that the "actual innocence" gateway through limitations on second or third habeas petitions established in Schlup might also apply to the AEDPA statute of limitations. See Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002). Subsequently, in Lee, the court confronted the issue head-on and held that the Schlup exception does not apply to the statute of limitations. However, the court has granted rehearing en banc in Lee and ordered that the panel opinion not be cited as precedent to or by a court in this circuit. Lee v. Lampert, No. 09-35276, slip op. at 1 (9th Cir. Feb. 8, 2011) (order).

Regardless of whether an actual innocence exception to AEDPA's statute of limitations exists, "actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). Petitioner pled nolo contendere to second degree murder, and now wishes to withdraw his plea. He argues that he is not guilty of second degree murder because "the elements for murder are not present." (Opp'n at 4.) But at no point does he assert that he is factually innocent of the crime of murder. Petitioner has not come forward with new reliable evidence showing that he did not engage in the conduct that led to the victim's death. He instead recounts the facts of the case, argues that "the evidence of his case, coupled with the unconstitutional sentence . . . [demonstrate] that petitioner further fits into the scope and gateway of the Schulp [sic] standards," (id. at 5), and makes the legal argument that the trial court wrongfully accepted his nolo contendere plea and that his counsel provided ineffective assistance. The Court agrees with the Sixth Circuit Court of Appeals, which rejected a similar argument: "the constitutional errors claimed by [the petitioner] . . . do not implicate the 'concern about the injustice that results from the conviction of an innocent person,' that underlies 'actual innocence' tolling." Casey v. Tennessee, 399 F. App'x 47, 49 (6th Cir. 2010) (quoting Schlup, 513 U.S. at 325) (proscribing Schlup gateway

United States District Court
For the Northern District of California

where petitioner argued that he was tried in the wrong court). Accordingly, Petitioner is not entitled to review of his petition under the actual innocence exception.

**CONCLUSION**

Respondent's motion to dismiss the petition as untimely (docket no. 6) is GRANTED. The instant petition is DISMISSED pursuant to 28 U.S.C. § 2244(d)(1).

Further, a certificate of appealability is DENIED. Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

This Order terminates Docket no. 6.

IT IS SO ORDERED.

DATED: March 31, 2011

Saundra B Armstrong
SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JEFFREY CLAYTON STOFLE,

Plaintiff,

v.

WARDEN ID CLAY et al,

Defendant.
___________________________________/

Case Number: CV09-02847 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 5, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jeffrey C. Stofle V-12971
Sierra Conservation Center
5150 O'Byrnes Ferry Road
Jamestown, CA 95327

Dated: April 5, 2011

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

**United States District Court**
For the Northern District of California